IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 8:03CR193 / 8:03CR194 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| ROBERT G. FLECK JR., and | ) | |
| KEN R. FLECK, | ) | |
| | ) | |
| Defendants. | ) | |

Defendants are before the court for resentencing after remand from the United States Court of Appeals for the Eighth Circuit ("Eighth Circuit"). *See United States v. Fleck*, 413 F.3d 883, 893-94 (8th Cir. 2005). This memorandum supplements findings made on the record on January 4, 2006.[1]

## I.    BACKGROUND

This action has been remanded for resentencing pursuant to *United States v. Booker*, 543 U.S. 220, —, 125 S. Ct. 738, 160 (2005). In *Booker*, the United States Supreme Court found the mandatory United States Sentencing Guidelines ("the Guidelines") violated the Sixth Amendment. *Id.*, 543 U.S. at —, 125 S. Ct. at 756 (Stevens, J., substantive opinion). The Court found that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.* To remedy the violation, the United

---

[1]To the extent that this memorandum conflicts with any statements on the record, the memorandum controls. The court notes that the memorandum was drafted with the benefit of closer evaluation of the record, further reflection, and additional guidance from the Eighth Circuit Court of Appeals.

1

States Sentencing Guidelines were rendered advisory. *Id.*, 543 U.S. at —, 125 S. Ct. at 738, 757 (2005) (Breyer, J., remedial opinion).

Defendants were convicted, after a jury trial, of being felons in possession of firearms in violation of 18 U.S.C. § 922(g). A revised Presentence Investigation Report ("PSR") was prepared by the United States Probation Office ("Probation Office") before the defendants' first sentencing. At the original sentencing, the government accepted and adopted the findings in the PSR. In Ken Fleck's PSR, the Probation Office determined, based on the prosecutor's version of events and police reports, that the base offense level for his crime was 20 under U.S.S.G. § 2K2.1(a)(2) for possession of firearms after one felony conviction for a crime of violence.[2] A four-level adjustment was applied because the offense involved 8 to 24 firearms, resulting in offense level 24. No adjustment for acceptance of responsibility was applied for the reason that defendants had gone to trial. Ken Fleck's criminal history category was found to be category III based on the assessment of three criminal history points for the previous felony conviction and two criminal history points for having committed the instant crime less than two years after release from prison for his earlier conviction under U.S.S.G. § 4A1.1(e).

Based on that calculation, Ken Fleck's recommended Guidelines range of imprisonment was 63 to 78 months (five years, three months to six years, six months). Defendant Ken Fleck objected to the calculation of his criminal history score and to the four-level increase in offense level for the number of firearms. This court denied defendant

---

[2]Ken Fleck was convicted of sexual assault of a child in 1999. He was sentenced to 20 to 30 months imprisonment on that charge and was released from confinement on July 13, 2000.

Fleck's motion.  He was sentenced to a term of imprisonment of 63 months (five years and three months).

With respect to Robert Fleck, the Probation Office determined, again based on the prosecutor's version of events and police reports, that the base offense level for the crime was 24 under U.S.S.G. § 2K2.1(a)(2), which sets the penalty for possession of firearms by a person with two violent felony convictions.[3]  A four-level increase was applied to the base offense level under U.S.S.G. § 2K2.1(b)(1) because the offense involved 8 to 24 firearms, resulting in offense level 28.  No adjustment for acceptance of responsibility was applied because the defendants had gone to trial.  Robert Fleck's criminal history category was found to be category III based on the assessment of three criminal history points for the burglary conviction and one criminal history point for a conviction in 1998 for possession of a weapon and urinating in public, for which he was fined $25.00.  No criminal history points were assessed for Robert Fleck's 1990 felony conviction because the sentence had been imposed more than ten years prior to the commencement of the instant offense, pursuant to U.S.S.G. § 4A1.2(e)(3).  Based on that calculation, Robert Fleck's recommended Guidelines range of imprisonment was 97 to 121 months (eight years, one month to ten years, one month).  Robert Fleck objected to the finding of the number of firearms in the PSR and the characterization of burglary of a commercial building as a crime of violence and moved for downward departure by reason of his subaverage intelligence.  This court denied the motion, and overruled the objection with respect to the number of firearms, but found that the burglary of a keno parlor was not a crime of

_____

[3]Robert Fleck was convicted of use of a firearm to commit a felony in March 1990 and was sentenced to imprisonment of one year for that conviction.  He was released from prison on that charge in November 1990.  He was convicted of burglary in 1991 and was sentenced to 30 months' imprisonment. In May 1994, he was released from prison on that charge.

violence, thus, reducing the base offense level to 20. The court applied a four-level increase based on the number of firearms, resulting in base offense level 24 which produced a sentencing range of 63 to 78 months. Robert Fleck was also sentenced to 63 months' incarceration.

Defendants appealed to the United States Court of Appeals for the Eighth Circuit. The Eighth Circuit affirmed defendants' convictions, but remanded for resentencing. *United States v. Fleck*, 413 F.3d at 893-94 (8th Cir. 2005). It found that this court had committed error, pursuant to *United States v. Booker*, 543 U.S. at —, 125 S. Ct. at 760 (2005), in sentencing the defendants under the mandatory Guidelines, but defendants had not preserved that error by citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000), or *Blakely v. Washington*, 542 U.S. 296 (2004), at the sentencing. *Fleck*, 413 F.3d at 896 n.4. It determined, as a matter of law, that Robert Fleck's 1991 burglary conviction was a crime of violence and remanded "with instructions that the district court resentence Robert in light of the fact that his 1991 conviction for burglary constitutes a crime of violence." *Id.* at 895. The Eighth Circuit also found that the court had correctly applied the Guidelines in denying Robert Fleck's objection to the calculation of his base offense level for possessing firearms with a lawful purpose and affirmed the denial of defendant Ken Fleck's Confrontation Clause challenge to the admission of an exhibit at the sentencing hearing.[4] *Id.* at 894-95. It further found that Ken fleck had shown the error in his sentencing to be of constitutional magnitude, but Robert Fleck had not. *Id.* at 896.

The original revised PSR remains in force for resentencing. The government has again accepted and adopted the facts contained in the revised PSRs. The government

---

[4]The exhibit was an affidavit from an ATF agent that established three firearms were operable and had traveled in interstate commerce.

4

objects, however, to any recalculation of defendant Robert Fleck's Guidelines sentence. It contends that the same calculation should be applied under either an advisory or mandatory Guidelines scheme and that the determination of Robert Fleck's Guidelines range in the first sentencing is the "law of the case."  Defendants raise a constitutional objection to the revised PSR and defendant Robert Fleck again moves for downward departure.  Both defendants urge the court to resentence them to time served, which is presently 31 months.

## II.   DISCUSSION

### A.   Law of the Case

The government's contention that the law of the case doctrine precludes this court from redetermining Robert Fleck's Guidelines sentence is unavailing.  The law of the case doctrine prevents relitigation of a settled issue in a case and requires that courts follow decisions made in earlier proceedings to insure uniformity of decisions, protect the expectations of the parties and promote judicial economy.  *Klein v. Arkoma Prod. Co.*, 73 F.3d 779, 784 (8th Cir. 1996).  When a case has been decided by the Eighth Circuit and remanded to the district court, every question that was presented to and disposed of by the Eighth Circuit in its decree is finally settled and determined.  *Id.*

The Eighth Circuit follows the majority view that sentencing after a remand should be conducted *de novo*, and, thus, a district judge is not limited to reviewing only those issues related to the remand order.  *United States v. Cornelius*, 968 F.2d 703, 705 (8th Cir. 1992) (stating "[o]nce a sentence has been vacated or a finding related to sentencing has been reversed and the case has been remanded for resentencing, the district court can hear any relevant evidence on that issue that it could have heard at the first hearing"); *see*

*also United States v. Sickinger*, 179 F.3d 1091, 1094 (8th Cir. 1999) (stating that "[w]here one basis for an enhanced sentence is ruled legally impermissible, however, [resentencing] occasionally allows use of another ground for enhancement"). "The policy underlying the presumption of *de novo* resentencing is to give the district court discretion in balancing all the competing elements of the sentencing calculus." *United States v. Saikaly*, 207 F.3d 363, 369 (6th Cir. 2000). However, "all issues [actually] decided by the appellate court become the law of the case," and the sentencing court must "adhere to any limitations imposed on its function at resentencing by the appellate court." *Cornelius,* 968 F.2d at 705. A court is generally permitted, however, to depart from a ruling made in a prior appeal in the same case where there has been an intervening change of law or if the earlier decision is clearly erroneous and would work a manifest injustice. *United States v. Matthews*, 312 F.3d 652, 657 (5th Cir. 2002).

In the context of this case, because it was remanded for resentencing after *Booker,* the court must resentence according to *Booker's* remedial scheme, which mandates that "a district court should impose sentence after considering the federal sentencing guidelines and other sentencing goals set out in 18 U.S.C. § 3553(a)." *United States v. Pizano,* 403 F.3d 991, 995 (8th Cir. 2005). Under *Booker*, the determination of a reasonable sentence pursuant to 18 U.S.C. § 3553 must be made by a district court in the first instance. *United States v. Acison*, 417 F.3d 944, 946-47 (8th Cir. 2005). The district court's sentence can then be reviewed on appeal for reasonableness guided by those statutory sentencing

factors. *Pizano,* 403 F.3d at 995.  By remanding for a sentence consistent with *Booker,*

the Eighth Circuit implicitly reopened *Booker* issues for resolution by the court.[5]

The only aspect of defendant Robert Fleck's earlier sentence that was conclusively

"presented to and disposed of" by the Eighth Circuit is the ruling, as a matter of law, that

a burglary of a commercial building is a crime of violence.  *See Fleck*, 389 F.3d at 895.

Accordingly, the court finds it appropriate to consider the defendants' renewed objections

and motions in connection with the resentencing.

## B.   Sentencing Procedure

After *Booker*, this court is charged with the duty to "impose a sentence sufficient,

but not greater than necessary," to comply with sentencing purposes and to "consider the

nature and circumstances of the offense and the history and characteristics of the

defendant" in so doing.  *See* 18 U.S.C. § 3553(a)(1).  The court must further consider the

need for the sentence imposed to reflect the seriousness of the offense, to promote

respect for the law, and to provide just punishment for the offense; to afford adequate

deterrence to criminal conduct; to protect the public from further crimes of the defendant;

and to provide the defendant with needed educational or vocational training, medical care,

---

[5]The Eighth Circuit's finding that the *Booker* error that led to an incorrect sentence for Robert Fleck was not of constitutional magnitude is of no consequence.  That finding establishes only that if the *Booker* error had been the sole sentencing error raised, it would have been considered forfeited as not rising to the level of plain error.  In failing to show he would have been given a different sentence under the advisory Guidelines, Robert Fleck has not shown that the error would seriously affect the fairness, integrity, or public reputation of the proceedings.  It does not mean that the district court is free to ignore *Booker* or that it must impose the same sentence as it did earlier.  Because the action was remanded for other reasons, the court must resentence both defendants with the "benefit of guidance from *Booker*, including the requirement that a district court must consider the advisory guideline range and arrive at a final sentence that is 'reasonable' with regard to 18 U.S.C. § 3553(a)."  *See e.g., Acison*, 417 F.3d at 946-47.

Although Robert Fleck may not have demonstrated to the Eighth Circuit on appeal that this court "would have imposed a more favorable sentence under an advisory sentencing scheme" so as to warrant a remand for that purpose, the fact is that the court would have.  The court cannot now impose a sentence that would be contrary to the present advisory sentencing scheme.

or other correctional treatment in the most effective manner.  18 U.S.C. § 3553(a)(2).  In addition, the court must consider, as advisory, the kinds of sentence available and the applicable category of offenses and category of defendant as set forth in the Guidelines, and its policy statements, as well as the need to avoid unwarranted sentencing disparities among defendants who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(3)-(6).

The Eighth Circuit Court of Appeals urges district courts to follow a three-step procedure in sentencing.  *United States v. Hawk Wing*, 433 F.3d 622, 631 (2006).  The court must first determine the appropriate Guidelines sentencing range, since that range remains an important factor to be considered in the imposition of a sentence.  *United States v. Mashek*, 406 F.3d 1012, 1016 n.4 (8th Cir. 2005); *United States v. Haack*, 403 F.3d 997, 1002 (8th Cir. 2005), *cert. denied*, 126 S. Ct. 276 (2005).  Nothing in *Booker* requires the court to determine the appropriate Guidelines sentencing range in any manner other than the way the sentence would have been determined pre- *Booker*.  *Id.*

Once the applicable Guidelines range is determined, the court should then decide if a traditional departure is appropriate under Part K and/or § 4A1.3 of the Guidelines. *Haack,* 403 U.S. at 1002.  A sentence that includes a formerly permissible departure is "consistent with the now-advisory Guidelines and this is generally indicative of reasonableness."  *United States v. Shannon*, 414 F.3d 921, 924 (8th Cir. 2005).  However, "[b]ecause the guidelines are now advisory, a reasonable departure is not limited solely to circumstances that the formerly mandatory guidelines framework would have deemed permissible bases for departure."  *United States v. Hadash*, 408 F.3d 1080, 1083 (8th Cir. 2005) (stating that *Booker* excised the narrow prescription for when departures are

warranted); *cf. Hawk Wing*, 433 F.3d at 632 (implying that district courts' discretion is still constrained to some degree by "traditional departure" rules). Application of the above considerations will result in a "Guidelines sentence." *Haack*, 403 F.3d at 1002.

The court then considers all the factors set forth in § 3553(a) to determine whether to impose the Guidelines sentence or a non-Guidelines sentence. *Id. Booker,* 125 S. Ct. at 767. Calculation of the appropriate Guidelines sentence is only the first step in sentencing decisions after *Booker*, for the court must also consider the § 3553(a) factors before making its ultimate decision. *United States v. Mickelson*, No. 05-2324, — F.2d —, 2006 WL 27687, *5 (8th Cir. Jan. 6, 2006); *United States v. Winters,* 416 F.3d 856, 860-61 (8th Cir. 2005) (noting that "[t]he Guidelines range is merely one factor," and any possible sentencing disparity resulting from an outside-Guidelines sentence must not be isolated "to the exclusion of all the other § 3553(a) factors").

### C.   Reasonableness

Notably, equating reasonableness with a Guidelines sentence in every case will make the Guidelines again mandatory, triggering the concerns raised in *Booker*. *See Mickelson*, 2006 WL 27687 at *5 (stating that if within-Guidelines sentences were not subject to review for reasonableness, the effect would be to "return[ ] federal sentencing to something like the mandatory guideline system found unconstitutional in *Booker*" and "would encourage trial courts to sentence only within guideline ranges to avoid having sentences overturned on appeal"); *Winters*, 416 F.3d at 861 (noting that a finding that "the range of reasonableness is essentially co-extensive with the Guidelines would effectively render the Guidelines mandatory"). Conformity with a correct application of the formerly-mandatory guidelines, however, is presumptively reasonable. *United States v. Lincoln*, 413

F.3d 716, 717-18 (8th Cir. 2005), *cert. denied,* 74 U.S.L.W. 3351 (U.S. Dec. 12, 2005); *United States v. Craiglow*, 432 F.3d 816, 819 (8th Cir. 2005) (noting that the Eighth Circuit has "not yet held that a sentence within a correctly calculated Guideline range is reasonable per se"). The Eighth Circuit has rejected the position that any sentence outside the Guidelines is unreasonable. *United States v. Feemster*, No. 05-1995, — F.3d —, 2006 WL 162990, *3 (8th Cir. Jan. 24, 2006).

Thus, under the present sentencing regime, "a guideline sentence, although presumptively reasonable, can still be unreasonable when all the § 3553(a) factors are taken into consideration." *Id.* at *5. A sentence may be found unreasonable if the trial court: (1) failed to consider a relevant factor that should have received significant weight; (2) gave significant weight to an improper or irrelevant factor; or (3) considered only appropriate factors, but in weighing those factors committed a clear error of judgment. *United States v. Vasquez,* 433 F.3d 666, 671 (8th Cir. 2006)*; United States v. Sanchez*, 429 F.3d 753 (8th Cir. 2005) *(a* sentence is "reasonable and not an abuse of discretion" under same standards). The appellate court's review for reasonableness is abuse of discretion. *Pizano,* 403 F.3d at 995. Importantly, however, "[b]oth the grounds to support a sentence outside the range and the sentencing judge's discretion in weighing those grounds have increased significantly" under the advisory Guidelines. *Mickelson*, 2006 WL 27687 at *5.

D.     **Constitutional Objections**

The Flecks' constitutional objections relate to the court's finding of sentencing facts by a standard lower than proof beyond a reasonable doubt.[6]   The quantum of proof necessary to establish sentencing facts is rooted in the Due Process Clause of the Fifth Amendment.  *In re Winship*, 394 U.S. 459, 466 (1969); *Apprendi v. New Jersey,* 530 U.S. 466, 476 (2000).  The Due Process Clause is implicated whenever a judge determines a fact by a standard lower than "beyond a reasonable doubt" if that factual finding would increase the punishment above the lawful sentence that could have been imposed absent that fact.  *Id.* at 476.

"[B]ut for the mandatory nature of the Guidelines, fact findings by the district court will not offend the Sixth Amendment."  *United States v. Ryder*, 414 F.3d 908, 917 (8th Cir. 2005) (emphasis added); *United States v. Pirani*, 406 F.3d 543, 552 n.4 (8th Cir. 2005) (en banc) (stating that "[n]othing in *Booker* suggests that sentencing judges are required to find sentence-enhancing facts beyond a reasonable doubt under the advisory Guidelines regime").  The issue, however, is less clear with respect to a due process challenge.[7]  *See United States v. Hardridge*, 149 Fed. Appx. 746, 748 (10th Cir. 2005) (unpublished opinion) (stating that Fifth and Sixth Amendments each have "a distinct constitutional pedigree and waiver of one cannot be considered waiver of the other").  Whether a preponderance standard will satisfy due process with regard to all sentencing facts is not entirely clear

---

[6]On appeal, the Eighth Circuit established that a preponderance standard is sufficient in reference to Sixth Amendment protections, but did not address a Fifth Amendment challenge.  *See Fleck*, 413 F.3d at 895.

[7]In *Booker*, the Supreme Court carefully limited its holding to the Sixth Amendment right to a  jury trial and did not address the requirement of proof beyond a reasonable doubt.  *See Booker*, 125 S. Ct. At 798 n.6 (Thomas, J., dissenting).  Similarly, the Eighth Circuit limited its holding in *Pirani* to the Sixth Amendment, finding that no due process challenge had been presented.  *See Pirani*, 406 F.3d at 550.

under Eighth Circuit precedent.[8]  *Compare United States v. Garcia Gonon*, 433 F.3d 587, 592 (8th Cir. 2006) (holding that "the constitutional due process argument fails because 'it is appropriate for a district court to consider uncharged relevant conduct for purposes of sentencing, even if it increases the sentence that would otherwise be applied, so long as the sentence does not exceed the <u>statutory maximum authorized for the charged offense</u>.'" (quoting *United States v. Red Elk*, 368 F.3d 1047, 1051 (8th Cir. 2004), *vacated and remanded for consideration of Booker, aff'd on reh'g*, 426 F.3d 948 (8th Cir. 2005)) (emphasis added) *with United States v. Archuleta*, 412 F.3d 1003 (8th Cir. 2005) (reaffirming, post-*Booker*, its adherence to the principle that "the constitutional protections of due process limit the government's ability to establish sentencing factors that subject a defendant to a sentence wholly unrelated to the substantive offense of which he was convicted" and acknowledging that, at some point, reliance on facts that have not been proved beyond a reasonable doubt to increase a sentence will violate due process, even within the statutory range).[9]

---

[8]Whether the remedy for Sixth Amendment violations—advisory Guidelines—also remedies due process violations has not been determined by the Supreme Court.  Importantly, the Supreme Court has emphasized the continuing validity of *Jones v. United States*, 526 U.S. 227, 243, n.6 (1999) and *Apprendi*, 530 U.S. at 490.  *See Shepard*, 125 S. Ct. 1254, 1262; *see also Schriro v. Summerlin*, 542 U.S. 348, 351 n.1, 352-55 (2004) (stating that judicial determinations *made beyond a reasonable doubt* are sufficiently reliable that they do not render a trial fundamentally unfair).

[9]Notably, even before *Blakely* and *Booker*, the Eighth Circuit suggested that when a district court's consideration of relevant conduct results in a drastic increase in a sentence, the preponderance standard may not satisfy due process.  *United States v. Alvarez*, 168 F.3d 1084, 1088 (8th Cir. 1999).  It acknowledged "the possibility that the preponderance standard the [Eighth Circuit] approved for garden variety sentencing determinations may fail to comport with due process where . . . a sentencing enhancement factor becomes 'a tail which wags the dog of the substantive offense.'" *United States v. Townley*, 929 F.2d 365, 369 (8th Cir.1991) (*quoting McMillan v. Pennsylvania*, 477 U.S. 79, 88 (1986)); *United States v. Wise,* 976 F.2d 393, 400-01  (8th Cir.1992) (stating that due process concerns must be addressed when the consideration of relevant conduct so greatly increases a defendant's sentence that the conduct "essentially becomes an element of the offense for which the defendant is being punished").  The Eighth Circuit impliedly advocated a "clear and convincing" standard.  *See United States v. Brown*, 156 F.3d 813, 817, 816, n.3 (8th Cir. 1998)

*Booker's* advisory-Guidelines remedy is premised on its substantive acknowledgment that no *Apprendi* problem arises if a district court is bound only by the statutory maximum with no prospect of a reversal within that range. *Booker*, 125 S. Ct. at 750 (substantive opinion), 764 (remedial opinion); *see also Apprendi*, 530 U.S. at 481. Thus, the operative factor in application of the remedy is the extent of a sentencing judge's discretion. Within the boundaries of its unfettered discretion, sentencing judges may rely on facts proved by a lower standard than proof beyond a reasonable doubt. *See Apprendi*, 530 U.S. at 481-83. Although sentencing courts have more discretion under the present advisory guidelines than under mandatory guidelines, they do not have the sort of "unfettered" discretion, i.e., generally not subject to review, that was given to them in the pre-Guidelines regime. Under the pre-Guidelines scheme, in order to overturn a sentence, "defendants had to show that it was so disproportionate to the offense as to violate the Eighth Amendment, or that there was some other procedural infirmity." *Mickelson,* 2006 WL 27687 at *5*; see also United States v. Brenneman*, 918 F.2d 745, 746 (8th Cir. 1990) (holding that a sentence imposed within the applicable statutory limits under the pre-Guidelines system was generally not subject to review on appeal, and would be reviewed only for manifest or gross abuse of discretion such that the severity of the sentence "shocks the judicial conscience"). Under the mandatory Guidelines, appellate review was allowed only in certain limited circumstances, such as an incorrect application of the

---

(finding that the government had met clear and convincing standard with respect to a five-fold increase); *United States v. Murray*, 67 F.3d 687, 690-91 (8th Cir.1995) (assuming without deciding that a nine-fold increase in a sentence based on relevant conduct was the "tail which [wagged] the dog of the substantive offense," but affirming nevertheless under clear and convincing standard; *United States v. Matthews*, 29 F.3d 462, 463 (8th Cir. 1994) (same).

Guidelines, or a sentence that was imposed in violation of law. *Mickelson*, 2006 WL at *5. The constraint on the sentencing court's discretion is now "reasonableness," which remains an elusive concept under evolving law.[10] *Id.* Whether the constraint of "reasonableness review" cabins this court's discretion to the point that "advisory" Guidelines effectively become "mandatory" Guidelines, triggering due process concerns, remains to be seen. Accordingly, a finding that sentencing courts may rely on facts proved by a preponderance of evidence to enhance a sentence after *Booker* does not lead to the conclusion that they must. *See, e.g., United States v. Gray*, 362 F. Supp. 2d 714, 719 (S.D. W. Va. 2005) (using reasonable doubt standard as gauge to measure confidence in Guidelines range); *United States v. Leroy*, 373 F. Supp. 887, 889 n.2 (E.D. Wis. 2005) (noting that "flimsy evidence" sufficed under old regime); *United States v. Pimental*, 367 F. Supp. 2d 143, 152 (D. Mass. 2005) (facts assuming inordinate importance such as drug quantity require procedural safeguards such as proof beyond a reasonable doubt); *United States v. Malouf*, 377 F. Supp. 315, 329 (D. Mass. 2005) (same).

In light of the uncertainty of this area of evolving law and in view of the increased discretion afforded to this court under the advisory Guidelines, the court will exercise its

---

[10] *See United States v. Feemster*, 2006 WL 162990, *3 (8th Cir. Jan. 24, 2006) (stating court was unable to say that 120 month sentence was unreasonable when Guidelines called for 360 months to life); *United States v. Denton,* No. 05-1978, —— F.3d ——, 2006 WL 162980, *1-2 (8th Cir. Jan. 24, 2006) (affirming within-Guidelines life sentence as reasonable when defendant had earlier been offered a plea agreement sentence of 18 to 36 months)*; United States v. Rogers*, 423 F.3d 823 (8th Cir. 2005) (affirming a 360-month sentence for a defendant with a Guidelines range of 57 to 71 months); *United States v. Winters*, 416 F.3d 856 (8th Cir. 2005) (affirming a 240-month sentence when the Guidelines called for 177 to 191 months); *United States v. Christenson*, 403 F.3d 1006 (8th Cir. 2005), *opinion vacated and district court judgment aff'd without opinion en banc by an equally divided court*, 424 F.3d 852 (8th Cir. 2005) (en banc) (involving sentence reduced to 60 months by district court although Guidelines called for a 240-month sentence); *United States v. Pizano*, 403 F.3d at 996-97 (8th Cir.2005) (upholding as reasonable a sentence of 18 months—considerably below the government's recommendation—where Guidelines called for minimum sentence of 120 months, because defendant assisted in other prosecutions, had no extensive criminal history, and expressed regret).

discretion in determining the quantum of evidence necessary for enhancing facts. This court continues to believe that the safer course, in order to avoid potential constitutional issues, is to continue to require heightened proof with regard to any facts that increase a sentence to any significant degree. *See, e.g., United States v. Okai*, No. 8:05CR19, 2005 WL 2042301 (D. Neb. Aug. 22, 2005); *United States v. Huerta-Rodriguez*, 355 F. Supp. 2d 1019, 1027 (D. Neb. 2005) *aff'd,* 2005 WL 3440785 (8th Cir. Dec. 16, 2005) (unpublished opinion)*.* Moreover, in crafting sentences in consideration of the § 3553 factors, the court believes that "whatever the constitutional limitations on the advisory sentencing scheme . . . it is not 'reasonable' to base any significant increase in a defendant's sentence on facts that have not been proved beyond a reasonable doubt." *See Huerta-Rodriguez*, 355 F. Supp. 2d at 1028; *Okai*, 2005 WL 2042301 at *10.

### E.    Determination of Guidelines Sentence

The court has been directed to consider and to take into account the Guidelines as one factor that informs its sentencing decision. In this case, dependant on certain legal and factual findings, the Guidelines can be calculated in several ways. As noted, in the PSR, the Probation Office applied an offense level of 24 at criminal history category III to Ken Fleck. It applied an offense level of 28 at criminal history category III to Robert Fleck. Defendant Ken Fleck has objected to an increase in his criminal history category by reason of the recency of his predicate conviction. Both defendants object to adjustment of their sentences based on the number of firearms they possessed. Of course, statements in the PSR are not evidence. *See United States v. Mayer*, 130 F.3d 338, 339 (8th Cir.1997) (stating that "when a defendant objects to portions of the PSR, the district court must base

15

its findings on evidence rather than on the disputed PSR information").  The court finds, regardless of whether one calculation or the other is correct, the difference in potential Guidelines sentences between the two would not make a difference in the court's ultimate sentence.  Even if a certain Guidelines sentence were presumed reasonable, the facts presented in this case would rebut that presumption.

Whatever the standard of proof for factual determinations, the court finds, based on the evidence adduced at trial and at the sentencing hearings, that the government has not met its burden of proving that Ken Fleck's criminal history category should be increased by reason of his commission of the crime within two years of his release from prison on another sentence.  This court has reviewed the transcript of the trial and finds that the government has presented evidence that shows only that Ken Fleck possessed the firearms at some time during the summer of 2002.  The government concedes that the evidence it presented did not narrow or pinpoint the possession to any particular date that summer.  Ken Fleck was released from prison on July 17, 2000.  In order to find defendant Ken Fleck possessed the firearms before July 17, 2002, the court would have to assume that because he was seen with the firearms after July 17, 2002, he must have possessed them before July 17, 2002.  Such an assumption does not amount to evidence.  Given the fact that "possession" requires dominion and control, the court cannot state that evidence establishes that Ken Fleck possessed the firearms during the period of time that would make him eligible for the assessment of two additional criminal history points.  Accordingly, defendant Ken Fleck's criminal history category is determined to be II.

Additionally, it appears that Robert Fleck's sentence was not correctly calculated in the PSR.  Under the 2003 version of the Guidelines, the base offense level depends on the number of underlying violent or drug-related felonies attributable to the defendant.  See U.S.S.G. § 2K2.1.  Robert Fleck's base offense level was set at 24 by reason of two prior felony convictions, one in 1990 and one in 1991.  However, only convictions that are afforded criminal history points under 4A1.2 (a)(b) or (c) can be considered in establishing the base offense level.  U.S.S.G. §  2K2.1, comment., n.15.  Robert Fleck's 1990 conviction did not result in assessment of any criminal history points under Section 4A1.2 (a), (b), or (c) because it was over ten years old and could not be counted.  U.S.S.G. § 4A1.2(e).  Accordingly, even with Robert Fleck's conviction for burglary of a commercial building counted as a violent felony, as directed by the Eighth Circuit, Robert Fleck's base offense level should be 20, for having possessed the firearms after one violent felony conviction.

With respect to the enhancement for the number of firearms possessed by each defendant, the court must decide whether an increase in base offense level of two levels (for possession of three to seven firearms) or an increase of four levels (for possession of eight to twelve firearms) is appropriate.  The record shows that these defendants were indicted for possession of three firearms.  Six firearms were offered into evidence, without objection, at trial.  The government seeks enhancement for possession of three additional firearms for a total of 9.  These firearms were all available to the government at the time of trial, as was the evidence to provide a foundation for their introduction at trial.  The government has not presented any reason for its failure to present these firearms for the

17

jury's consideration at trial.  The government's last-hour attempt to introduce evidence of these additional firearms is overreaching.  The defendants were led to believe, via the indictment and the evidence introduced at trial, that they were to be held responsible for possession of six firearms, and presumably made certain decisions in reliance on that fact.  The jury's verdict is supported by evidence of possession six firearms.  The defendants were not aware that possession of the additional firearms would be factored into their sentencing equation until the eve of the first sentencing hearing.

Under the circumstances, the court finds it would not be appropriate to expose the defendants to an increased term of imprisonment based on the government's late-stage introduction of this evidence.  Accordingly, the court will sustain defendants' objections to the findings of the PSR.  Moreover, if these additional firearms were factored into the Guidelines sentencing calculation, the court would depart downward under U.S.S.G. § 5K2.0(a)(2) because the facts of this case represent circumstances that the Sentencing Commission may not have adequately taken into consideration in formulating the Guidelines.  As discussed below, these defendants, though typical felons-in possession, are not typical of felons who have their sentences incrementally increased by virtue of multiple prior felonies or possession of multiple firearms.  Additionally, if points were assessed for recency, the court would depart downward on its own motion for overrepresentation of criminal history category.  *See United States v. Senior*, 935 F.2d 149, 150-51 (8th Cir. 1991).

Accordingly, the court finds Ken Fleck's Guidelines sentencing range is 46 to 57 months, based on a base offense level of 20, plus two levels for possession of three to

seven firearms, at criminal history category II.  Notwithstanding the court's findings on the record at sentencing, the court finds Robert Fleck's base offense level is 20 plus a two-level adjustment for possession of three to seven firearms, resulting in a Guidelines sentencing range of 51 to 63 months at criminal history category III.

### F.    Section 3553 Factors

The court next considers the 18 U.S.C. § 3553 factors to determine a reasonable sentence.  In consideration of those factors, the court finds that Ken Fleck should be sentenced to 48 months and Robert Fleck should be sentenced to 54 months.  These sentences are adequate to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford effective deterrence to criminal conduct and to protect the public from further crimes of the defendants.

In connection with these findings, the court notes that possession of firearms by a felon is, without doubt, a serious offense that Congress has decided to punish harshly. Nevertheless, in the unusual circumstances of this case, the seriousness of the defendants' crime is tempered by several factors.  First, the defendants did not possess the firearms in connection with any criminal activity.  None of the firearms were handguns or assault weapons; they were all shotguns or rifles.  The defendants held an erroneous but reasonable belief that possession of rifles was legal under Nebraska law.[11]  The firearms had been inherited as part of the defendants' deceased father's estate.  The firearms only came to the attention of law enforcement officers as a result of an

---

[11]Until recently, under Nebraska law, the felon-in-possession statute only criminalized the possession by a felon of a "firearm with a barrel less than eighteen inches in length."  Neb. Rev. Stat. § 28-1206 (Reissue 1989).  It was amended in 1995 to apply to "any firearm."  *Id.* (Reissue 1995).  Though the Nebraska felon-in-possession law has no impact on the application of federal law in this instance, it does provide evidence of defendants' intent and is relevant to their culpability.

acrimonious landlord/tenant dispute and not because of any actual or planned criminal activity. The court finds that these defendants are not the typical felons in possession that Congress intended to impact in enacting the criminal statute and corresponding Guidelines.

Moreover, the court finds that Ken Fleck was the least culpable of the two defendants and should receive a shorter sentence. The sentences will, thus, serve to eliminate unwarranted disparity between equally or more culpable co-defendants. *See United States v. Aldridge*, 3413 F.3d 829, 835-36 (8th Cir. 2005) (remanding so court could reconsider adjusting the sentence of more culpable co-defendant). Also, the court notes the low potential for recidivism by these defendants because of their ages, their exhibition of remorse, and the nature of their criminal records.

The court notes that this crime is also punishable under state law. The court has determined, with the parties' concurrence, the defendants' probable sentences under state law and finds that the sentences are sufficient to eliminate regional disparity in federal sentencing.[12] *See, e.g., United States v. Clark*, No. 05-4274, — F.3d —, 2006 WL 60273, *4 (4th Cir. Jan. 12, 2006) (noting that although § 3553(a)(6) has been interpreted to generally bar federal courts from basing a sentence on consideration of state sentences, "given the substantial, albeit not unchecked, discretion federal district courts enjoy after [*Booker*], they can take into account state sentencing practice in certain cases.").

_____

[12]In connection with this finding, the court notes that state and federal law enforcement officials in this jurisdiction have agreed to prosecute felon-in-possession cases in federal as opposed to state court, in part because of the harsher sentences meted out under the Guidelines. Because garden-variety felon-in-possession cases are not prosecuted to such an extent in other federal jurisdictions, the probable state sentence is relevant with respect to eliminating regional disparity in federal sentencing.

A Judgment and Order of Commitment, together with a statement of reasons will issue this date.

DATED this 6th day of February, 2006.

BY THE COURT:


**s/Joseph F. Bataillon**
UNITED STATES DISTRICT JUDGE

21